## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MIGUEL JACOVO MACIAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-3681 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits,

Plaintiff Miguel Jacovo Macias has filed a Motion for Summary Judgment [Doc. # 11]

("Plaintiff's Motion").    Defendant Michael J. Astrue, Commissioner of Social

Security, has responded, requesting that the administrative decision denying benefits

be affirmed, and Plaintiff has replied.[1]  Defendant's Response is deemed a motion for

summary judgment, to which Plaintiff has responded in his Reply.  Having considered

the parties' briefing, the applicable legal authorities, and all matters of record, the

---

[1]     Defendant's Response to Plaintiff's Motion for Summary Judgment [Doc. # 12]
("Response"); Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for
Summary Judgment [Doc. # 13] ("Reply").  Defendant's Response, while not styled
a motion for summary judgment, requests affirmance of the Commissioner's decision.
Response, at 13.

Court concludes that Plaintiff's Motion should be **denied** and summary judgment should be **granted** for Defendant.

## I.    BACKGROUND

### A.    Procedural Background

Macias filed an application for Title II disability insurance benefits with the Social Security Administration ("SSA") on September 6, 2006.  On the same day, he also filed an application for Title XVI supplemental security income.[2]   Both applications alleged disability beginning on June 30, 2003. After being denied benefits initially and on reconsideration, Macias timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ Earl W. Crump held a hearing on August 27, 2007, in Houston, Texas.[3] The ALJ heard testimony from vocational expert ("VE") Norman C. Hooge.  No medical expert testified.  In a decision dated September 27, 2007, the ALJ denied Macias' application for benefits.[4]  On November 26, 2007, Macias requested review of the ALJ's decision by the Social Security Administration's Office of Hearing and

---

[2]     R. 18.

[3]     R. 27-78 (hearing transcript).

[4]     R 18-26 (ALJ Decision).

Appeals.[5]   On October 29, 2008, the Appeals Council denied Macias' request to review the ALJ's decision, rendering the ALJ's determination final.[6]  Macias filed this case on December 17, 2008, seeking judicial review of the Commissioner's denial of his claim for benefits.[7]

### B.      Factual Background

Plaintiff alleges disability beginning on June 30, 2003, as a result of status post right elbow surgery, status post hernia repair, diarrhea, depression, hearing problems, poor memory, insomnia, and polyarthralgia (*i.e.*, pain in two or more joints).  For purposes of disability benefits, Plaintiff's date last insured ("DLI") is December 31, 2004, and Macias must establish disability existing prior to that date.  The ALJ found no disability from Macias' alleged onset date of June 30, 2003 through the date of the administrative decision, dated September 27, 2007.

Macias testified at his administrative hearing that attended school in Mexico and completed the third grade.  He does not understand English, whether spoken or written.[8]

From 1973-1999, Macias worked as an insulator and scaffold builder at various

---

[5]     R. 6.

[6]     R. 1-5.

[7]     Complaint [Doc. # 1].

[8]     R. 35-36.

construction companies.[9]  At some point before 1999, Macias fell on the driveway outside his home and suffered injury to his rectal area.[10]  Macias testified at his administrative hearing that he saw a doctor several days after the injury and had surgery.[11]  After this first rectal surgery, he had painful bowel movements and rectal bleeding; within a year, he had three more surgeries to the area, at least one of which was in Mexico.[12] Macias continued to work in construction after this injury.[13]

On January 10, 1999, Macias suffered a work-related accident resulting in injury to his right elbow.[14]  While working on a scaffold 150 feet above the ground, a 12-foot galvanized pipe struck his elbow; Macias went to a company doctor and had surgery that same day.[15] He also suffered an umbilical hernia, and had surgery several days later to repair it.[16]  It appears from the record that Macias never worked in

---

[9]     R. 166-173.

[10]    The exact date of Macias' rectal injury does not appear in the record.  Macias testified at his administrative hearing that the rectal injury occurred before his elbow injury, which was in January 1999.  R. 49-50.

[11]    R. 50.

[12]    R. 51-53.

[13]    R. 67-68.

[14]    R. 272-280.

[15]    R. 53-58 (transcript of hearing before ALJ).

[16]    R. 57-58.

construction after this accident, but worked briefly as a grocery stocker from January through June of 2003.

On June 27, 2003, Macias was admitted to Memorial Hermann Northwest Hospital for lower abdominal pain.[17]   He reported that the pain had started fourteen days earlier, and that it was constant, mild, dull, and aggravated by movement.[18]   He was discharged on the same day with several prescriptions.[19]   A hospital radiology report dated June 27, 2003, found a "[n]onspecific bowel gas pattern."[20]

On April 12, 2004, Macias attempted suicide by drug overdose.  He was treated in an emergency room for respiratory problems, nausea, vomiting, and altered mental status.[21]   Macias reported depressed mood due to lack of employment and his wife's stated intention to leave him.[22]   On April 14th, he was discharged with a discharge diagnosis of "[major depressive disorder], single episode, severe, [Global Assessment of Functioning score] 49."[23]   His condition on discharge was stabilized and improved,

---

[17]     R. 282-83.

[18]     R. 284.

[19]     R. 294.

[20]     R. 292.

[21]     R. 301.

[22]     R. 306.

[23]     R. 525.

and he was referred to a mental health clinic,[24] where he received follow-up care.[25] Records from December 2004, his last visit to the clinic, state that his symptoms were controlled.[26]

From May through September 2006, Macias was treated at the Harris County Hospital District (Aldine Clinic) for abdominal pain, rectal bleeding, and constipation.[27]

In September 2006, Macias applied for disability insurance and SSI. He reported that his "main physical problem" was that he could not lift "anything heavy" without bleeding and "strong abdominal pain."[28] He stated that he had pain every day and took medication to help; he reported limitations with lifting, bending, kneeling, and climbing because of abdominal pain and bleeding.[29] He also reported memory loss and problems with daily activities.[30]

---

[24]   R. 526.

[25]   R. 393-99 (April 2004); R. 388-92 (May 2004); R. 380-84 (July 2004); R. 374-79 (October 2004); R. 372-73 (December 2004); R. 369-71 (April 2005).

[26]   R. 372.

[27]   R. 480-97.

[28]   R. 200.

[29]   R. 201.

[30]   R. 195-200 (reporting that he looked for work but no one would hire him, and that
(continued...)

On October 26, 2006, soon after his application for benefits, Macias received an examination by Social Security's Disability Determination Services.[31]  The clinical interview was conducted by Manizeh Mirza-Gruber, M.D.  Macias' chief complaint was depression.  He stated that he had seven different surgeries in the past few years and "is not able to work as a mechanic and in scaffolding because he cannot get employed."[32]  The report recounts his past injuries and depression.  Macias had stopped taking his medications.  He reported insomnia, poor concentration, extreme forgetfulness, and feeling "down" and useless.[33]  He reported some hearing loss. The examiner stated, "Prognosis is fair with treatment, psychosocial support, and rehabilitation."[34]

On October 31, 2006, Macias was examined at Bayou Rehab and Medical Clinic by John C. Anigbogu, M.D.[35]  The noted diagnostic impressions were

---

[30]     (...continued)
   because of his physical limitations and memory loss he relied on his wife to coordinate his clothing, prepare meals, help with shopping and money, and make all decisions).

[31]     R. 331-36.

[32]     R. 331.

[33]     R. 332.

[34]     R. 335.

[35]     R. 338-39.

polyarthralgia, history of gastrointestinal bleeding, history of major depression, and a repaired umbilical hernia.

On December 4, 2006, Macias was examined by Don Marler, Ph.D., who completed a Psychiatric Review Technique form on behalf of the Social Security Administration. The examiner reported depressive syndrome characterized by anhedonia or pervasive loss of interest, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.[36]  He found that Macias experienced mild limitation on daily activity, mild limitation in maintaining social functioning, and moderate limitation in concentration, persistence, or pace.[37]  Macias reported depression but was not currently receiving treatment or taking medications.[38]  The report states the prognosis "is fair with treatment" and that the "[a]lleged limitations are not fully supported" by the evidence of record.[39]

On the same day, Marler completed a Mental Residual Functional Capacity Assessment.[40]  Marler found moderate limitations in some areas and no marked

---

[36]   R. 344.

[37]   R. 351.

[38]   R. 353.

[39]   R. 353.

[40]   R. 355-58.

limitations.  The narrative states, "Claimant has the capacity to understand, remember and carry out detailed, NOT COMPLEX, tasks; interact appropriately with others; adapt to a routine work setting and attend and concentrate for extended periods."[41]

On December 5, 2006, a Physical Residual Functional Capacity Assessment was completed by Robin Rosenstock, M.D.[42]  The form notes a primary diagnosis of polyarthralgia and a secondary diagnosis of a history of gastrointestinal bleeding.[43] The assessor states that Macias' "[a]lleged limitations are not fully supported" by the evidence of record.[44]

On December 5, 2006, based on these assessments, the Social Security Administration concluded that Macias was not disabled through either his date last insured ("DLI") (December 31, 2004) or the date of determination (December 5, 2006), and denied his application for SSI and disability insurance.[45]

Macias continued to receive treatment in 2007 and 2008 for abdominal pain, rectal bleeding and incontinence, gastroesophageal reflux disease ("GERD"), and

---

[41]   R. 357.

[42]   R. 359-366.

[43]   R. 359.

[44]   R. 364.

[45]   R. 79-80.

other conditions.[46]

## II.  **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[47]  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[48]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[49]

---

[46]     *E.g.*, R. 417-56; R. 509-11; R. 589-614.

[47]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[48]     FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[49]     *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.   <u>STANDARD OF REVIEW</u>

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[50] "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[51] It is more than a mere scintilla and less than a preponderance.[52]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[53] In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[54] If the Commissioner's findings are supported by substantial evidence, they

---

[50]   *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[51]   *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[52]   *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[53]   *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[54]   *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

are conclusive and must be affirmed.[55] Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[56]  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[57]  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[58]

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Macias applied for both Social Security disability insurance and Supplemental Security Income (SSI) benefits.  Social Security disability insurance benefits are authorized by Title II of the Social Security Act.  The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured[59] *and* disabled,[60] regardless of indigence.

SSI benefits are authorized by Title XVI of the Social Security Act, and

---

[55]    *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[56]    *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[57]    *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[58]    *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

[59]    42 U.S.C. § 423(c) (definition of insured status).

[60]    42 U.S.C. § 423(d) (definition of disability).

provides an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.[61]  Eligibility for SSI is based on proof of disability[62] and indigence.[63]  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled.[64]  Thus, the month following an application fixes the earliest date from which SSI benefits can be paid. Eligibility for SSI, however, is not dependent on insured status.

Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act, which defines disability in virtually identical language.  Under both provisions, "disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[65]  The law and regulations governing the determination of disability are the same for both

---

[61]    20 C.F.R. § 416.110.

[62]    42 U.S.C. § 1382c(a)(3) (definition of disability).

[63]    42 U.S.C. §§ 1382(a) (financial requirements).

[64]    *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

[65]    42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI).

programs.[66]

## B.      Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[67]   The claimant has the burden to prove disability under the first four steps.[68] If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[69]   Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[70] A finding that

---

[66]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[67]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[68]     *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[69]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[70]     *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[71]

In this case, the ALJ determined that Macias had not engaged in substantial gainful activity since his alleged onset date of June 30, 2003 (step one), and that he had four severe impairments, in particular, status post right elbow surgery, status post hernia repair, diarrhea, and depression (step two).  However, the ALJ concluded at step three that Macias did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the relevant federal regulations.[72]

Before proceeding to step four, the ALJ assessed Macias' Residual Functional Capacity (RFC).  The ALJ determined that Macias had the RFC to perform medium work, but that he was "unable to perform detailed work or work requiring sustained concentration, persistence, or pace for prolonged periods," and that he "can only occasionally interact with the general public."[73]  The ALJ found that the Macias' medically determinable impairments could reasonably be expected to produce the symptoms alleged by Macias, but "the claimant's statements concerning the intensity,

---

[71]    *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

[72]    R. 21-22 (considering Listing 1.02 (major dysfunction of a joint); Listing 5.00 ff (digestive system disorders); Listing 12.04 (affective disorder)).

[73]    R. 22.

persistence, and limiting effects of these symptoms are not entirely credible."[74]

Based on this RFC determination, the ALJ then proceeded to the final two steps. He consulted VE Norman Hooge, who testified that Plaintiff's previous work was heavy and semiskilled (insulator), heavy and skilled (scaffold builder), and medium and unskilled (stocker).[75]  At step four, the ALJ determined that Macias was unable to perform his past relevant work.[76]  At step five, he determined that jobs existed in the economy that Macias could perform, including kitchen helper, laundry laborer, and warehouse worker.[77]  When making this determination, the ALJ considered that Macias was closely approaching advanced age, as well as his marginal education and limited English.   The ALJ therefore concluded that Macias as not disabled from June

---

[74]    R. 23. Credibility determinations are the province of the ALJ and are entitled to deference if supported by substantial record evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990). The ALJ further explained his conclusion as follows: "While the claimant alleged a number of severe impairment[s] that prevent his working, his allegations are not supported by objective evidence.  Throughout the record his biggest concern has been in finding a job.  He obviously feels that he is able to work, he is just having difficulty finding a job." R. 24.  Noting that Macias was not taking medication or receiving mental health treatments, the ALJ stated, "Surely if he were experiencing the degree of symptomatology he alleges, he would have sought medical treatment.  His allegations are found to be exaggerated and only credible to the extent that they are consistent with the [RFC] set out above." *Id.*

[75]    R. 71.

[76]    R. 25.

[77]    R. 25-26.

30, 2003 through September 27, 2007, the date of the decision.[78]

C.    **Plaintiff's Arguments for Reversal**

Plaintiff now raises eight grounds for reversal of the Commissioner's denial of benefits: (1) the ALJ erred in failing to obtain an updated medical opinion of a medical expert (ME) as to the medical equivalence of Plaintiff's combined impairments; (2) the ALJ's failure to obtain an updated ME opinion constitutes failure to properly develop the case; (3) the ALJ erred, and violated Social Security Ruling (SSF) 96-6p, by not obtaining an updated ME opinion concerning medical equivalence; (4) the ALJ erred in not finding the Plaintiff disabled under grid rule 202.09; (5) the ALJ erred in finding that Plaintiff did not meet or equal Listing 12.04; (6) the ALJ erred in failing to consult a ME to determine Plaintiff's mental RFC; (7) the ALJ erred in failing to consider the non-exertional impairment of pain and its effects on the Plaintiff's ability to perform medium work; and (8) the ALJ erred in finding Plaintiff's hearing problems, depression, poor memory, insomnia, and polyarthralgia were not severe impairments.

1.    **ME Opinion as to the Medical Equivalence of Macias' Combined Impairments**

Macias argues that the ALJ erred because he failed to consult an ME regarding the medical equivalence of his cumulative impairments and determination of his

---

[78]    R. 26.

RFC.[79]  The ALJ found that Macias had four severe impairments—status post right elbow surgery, status post hernia repair, diarrhea, and depression—but that the impairments, considered both singly and in combination, did not satisfy the Commissioner's listings.[80]  He did not seek the assistance of an ME in reaching his conclusion.

Macias argues that an objective consideration of his severe impairments, in combination with his non-severe impairments (hearing loss, poor memory, insomnia, and polyarthralgia) and the secondary effects, "might very well have produced a listing equivalence."[81]  His briefing, however, provides no specific argument to support this general statement, and cites to no evidence to support his claim that the ALJ's assessment of his impairments or his functioning was in error.  In fact, while making general arguments about the ALJ's obligations when receiving additional evidence that "'may change the State agency medical or psychological consultant's findings'" regarding a claimant's impairments,[82] Macias never identifies the

---

[79]     Plaintiff's Motion, at 4-5.

[80]     R. 20-22.

[81]     Plaintiff's Motion, at 4.

[82]     Plaintiff's Motion, at 4 (citing *Brister v. Apfel*, 993 F. Supp. 574, 578 (S.D. Tex. 1998) (Kent, J.)).

"additional evidence" that might have altered the findings in his case.[83]

Moreover, Macias' argument that the ALJ erred by failing to consult an ME is contrary to Fifth Circuit authority, which holds that the use of ME testimony is within the ALJ's discretion.[84]   This rule is recognized by *Brister*, the case upon which Macias relies.[85]   The Court therefore rejects Macias' argument.

---

[83]   Regarding additional medical evidence, Plaintiff's Reply states as follows:

> Plaintiff's reply is simply to note the bulk of the medical records submitted after that last medical review on February 27, 2007 (TR 400), which includes another 200+ pages of medical records.  (TR 401-614)  Additionally, the last mental expert review took place in January 2007 (TR 367), after which time another 30+ pages, at a minimum, of psych records were submitted.  (TR 368-399).

Reply, at 3 (footnote omitted).  This broad citation to vast portions of the record is insufficient to support a motion for summary judgment.  *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment") (internal citations and quotations omitted).  Plaintiff not only has failed to cite to specific medical records, but has failed even to identify a particular impairment that could or should have changed the ALJ's determination.

[84]   *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989) (ALJ is not required to consult a medical expert for evaluation of mental RFC evidence, even in cases in which a expert has been consulted regarding physical limitations).  *See Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) ("the ALJ was not required to obtain medical expert testimony to determine whether his alcohol use was disabling; the use and consideration of medical expert testimony is solely within the discretion of the ALJ") (citing 20 C.F.R. §§ 404.1526, 404.1527(f)(2)(iii)); *White v. Soc. Sec. Admin.*, 129 F. App'x 905, 906 (5th Cir. 2005) ("the record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony") (citing *Ford v. Sec'y of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir.1981)).

[85]   The *Brister* Court stated,

(continued...)

### 2.      Proper Development of the Case

Macias argues that the ALJ's failure to seek the assistance of an ME constitutes a failure to develop the record properly, and therefore warrants remand.[86]  As held in *Carey v. Apfel*, an ALJ "has a duty to fully and fairly develop the facts relative to a claim for disability benefits."[87]  However, in the next sentence, the *Carey* court noted the requirement that a claimant establish prejudice:

> This Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.  To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result."[88]

Although Macias makes the vague claim that "[c]onsultation of a qualified ME at the

---

[85]      (...continued)
> The Court rejects Plaintiff's argument that the ALJ erred by failing to hear from a medical expert following Plaintiff's submission of additional evidence. It is clear that when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required.  *See* SSR 96-6p. In this case, the ALJ did not believe this additional evidence . . . would disturb his findings.

*Brister*, 993 F. Supp. at 578 n.2 (emphasis original).

[86]      Plaintiff's Motion, at 5-6.

[87]      *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (*citing Brock v. Chater,* 84 F.3d 726 (5th Cir.1996); *Kane v. Heckler,* 731 F.2d 1216 (5th Cir. 1984)).

[88]      *Id*. (internal citations omitted) (quoting *Kane*, 731 F.2d at 1220).

ALJ hearing would likely have resulted in a different outcome,"[89] he provides no argument or citation in support of this assertion.  Macias has failed to show that he was prejudiced by the ALJ's failure to consult an ME.

### 3.    Social Security Ruling 96-6p

Macias argues that the ALJ violated Social Security Ruling (SSR) 96-6p when he failed to seek the assistance of an ME regarding the severity of Plaintiff's impairments, the functional implications thereof, and medical equivalence.[90]  This argument is substantively indistinguishable from his first argument.  Although this third argument highlights Social Security Ruling 96-6p, this ruling merely states the same principle discussed above, *i.e.*, that the ALJ must obtain an updated medical opinion from a medical expert when additional medical evidence may, *in the opinion of the ALJ*, change the prior finding regarding the severity of the claimant's impairments.[91]  This argument therefore is rejected for the reasons stated previously.[92]

---

[89]    Plaintiff's Motion, at 5.

[90]    *Id*. at 6-7.

[91]    SSR 96-6p, *3-*4 (1996).

[92]    Moreover, as above, Macias' briefing lacks any specific argument about why an updated medical opinion was appropriate in his case.  Although he asserts that "the ALJ has failed to recognize the critical importance of various diagnostic and evaluative procedures in the record and the manifestly positive clinical findings that have been evidence in numerous examinations," Plaintiff's Motion, at 6, he makes no citations to the record and references no particular diagnostic procedures or clinical
(continued...)

### 4.      Determination of Disability under Grid Rule 202.09

Macias argues that the ALJ erred in finding him capable of a medium exertion level and that, if this alleged error were corrected and Macias were found capable of only light exertional activity, he then would qualify as "disabled" under Grid Rule 202.09.[93]

Grid Rule 202.09 directs a disability finding for "an individual who has the residual capacity for light work, an unskilled work history, is illiterate or unable to communicate in English, and is approaching advanced age."[94]   This rule does not apply to Macias for two reasons.  First, his work history includes skilled and semi-skilled jobs[95] and, as stated above, the rule applies only to those individuals with unskilled work histories. Second, the rule does not apply to Macias because of the ALJ's finding that his RFC was medium.[96]   Macias' only challenge to the ALJ's finding of medium RFC is that the ALJ reached his conclusion "without the assistance

---

[92]      (...continued)
findings.

[93]      Plaintiff's Motion, at 7; Reply, at 3-4.

[94]      *Pena v. Astrue*, 271 F. App'x 382, 384 (5th Cir. 2008) (citing 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 2.)

[95]      R. 71 (testimony of VE Normal Hooge at Macias' administrative hearing).

[96]      The ALJ determined that Macias has the RFC to perform medium work, but that he is "unable to perform detailed work or work requiring sustained concentration, persistence, or pace for prolonged periods," and that he "can only occasionally interact with the general public."  R. 22.

of a medical expert and in direct contradiction to the treating notes and medical tests on file."[97]   As with his previous arguments, however, Macias' claim fails because he cites to nothing in the record that supports his argument.[98]   The ALJ's findings regarding Macias' RFC[99] are supported by substantial evidence.

### 5.   GAF Scores and Listing 12.04

Macias argues that the ALJ erred in failing to consider his Global Assessment of Functioning ("GAF") scores, which he claims demonstrate his disability and satisfy Listing 12.04.[100]   He states that his treating physicians "obviously" believed he was disabled because they assessed his GAF score in the 11-20 range in April 2004.[101]   He also cites to a GAF score of 50 in 2006.

Plaintiff's GAF score of 12 was assessed on April 12, 2004, just after his suicide attempt.[102]   However, by the time of his hospital discharge on April 14, 2004,

---

[97]   Plaintiff's Motion, at 7.

[98]   *See Perez*, 415 F.3d at 461 ("claimant bears the burden of proving that he or she suffers from a disability").

[99]   R. 23-25.

[100]   Listing 12.04 provides criteria for a finding of disability based on an affective disorder.   20 C.F.R. Pt. 404, Subpt. P, App. 1.

[101]   Plaintiff's Motion, at 7.

[102]   R. 308.

his GAF score was 49.[103]   Over the next eight months, he improved and stopped

receiving psychiatric care.[104]   Macias' GAF score of 12 was irrelevant to the disability

determination before the ALJ because the condition resolved within twelve months.[105]

Plaintiff also cites to a GAF score of 50 recorded in October 2006.[106]   Although

the parties agree that a GAF score of 50 indicates "serious impairment" in social,

occupational, or school functioning,[107] Macias cites no authority suggesting that a

GAF score of 50 is sufficient to support a finding of disability.   Indeed, as Plaintiff

concedes, GAF scores are not dispositive for a finding under Listing 12.04.[108]

---

[103]   R. 525.

[104]   At a follow up visit on July 20, 2004, his symptoms were described as follows: "Client reports being compliant with his medications.   He is improving with the medications, sleeping and eating well, no depression, some anxiety about finances. No A/V hallucinations, no s/h ideations. Only financial problems." R. 382.   His GAF score was assessed at 40.   R. 380. Upon discharge from the mental health clinic on April 21, 2005, due to "no follow through," his GAF score was assessed at 40.   R. 370.

[105]   42 U.S.C. § 423(d)(1)(A) (disability defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

[106]   R. 335.

[107]   Response, at 8 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM) 34 (4th ed.)).

[108]   65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (Commissioner declines to endorse
(continued...)

The ALJ considered both GAF scores when assessing Macias' impairments.[109]

He considered the criteria for Listing 12.04 which, under Paragraph B, requires two

or more of the following: marked restriction in activities of daily living; marked

difficulties in maintaining social functioning; marked difficulties in maintaining

concentration, persistence, or pace; or repeated episodes of decompensation, each of

extended duration.  The ALJ found only mild restrictions on daily living activities,

moderate difficulties in social functioning, moderate difficulties with concentration,

persistence or pace, and no extended episodes of decompensation.[110]  The ALJ further

found that Paragraph C criteria of Listing 12.04 were not satisfied.[111]

---

[108]    (...continued)
the GAF scale for use in Social Security and SSI disability programs, and states that
the GAF scale "does not have a direct correlation to the severity requirements in our
mental disorders listings").  *See Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir.
2007); *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n. 5 (11th Cir. 2005).

[109]    R. 23 (discussing GAF score of 12 in April 2004); R. 24 (discussing GAF score of 50
in October 2006).

[110]    R. 21.

[111]    R. 21.  Paragraph C of Listing 12.04 requires "[m]edically documented history of a
chronic affective disorder of at least 2 years' duration that has caused more than a
minimal limitation of ability to do basic work activities, with symptoms or signs
currently attenuated by medication or psychosocial support, and one of the following:

1.       Repeated episodes of decompensation, each of extended duration; or
2.       A residual disease process that has resulted in such marginal adjustment that
even a minimal increase in mental demands or change in the environment
would be predicted to cause the individual to decompensate; or
3.       Current history of 1 or more years' inability to function outside a highly
(continued...)

The ALJ's determination is supported by substantial evidence and therefore is conclusive.[112]

### 6.     ME Opinion Regarding Mental RFC

Macias argues that the ALJ's formulation of his RFC failed to consider his mental limitations.  He provides no citation to the record.

The ALJ's assessment of Macias' RFC explicitly considered Macias' mental limitations.[113]  He clearly took those limitations into account when concluding that Macias was capable of medium work "except that he is unable to perform detailed work or work requiring sustained concentration, persistence, or pace for prolonged periods" and "can only occasionally interact with the general public."[114]  Although Plaintiff faults the ALJ for making "very little provision for the restrictions and limitations imposed by the mental impairment,"[115] he specifies no additional restrictions or limitations that, in his opinion, were warranted.  Moreover, as held

---

[111]     (...continued)
                supportive living arrangement, with an indication of continued need for such
                an arrangement.

        20 C.F.R. Pt. 404, Subpt. P, App. 1 .

[112]     *See Perez*, 415 F.3d at 461.

[113]     R. 22-25.

[114]     R. 22.

[115]     Plaintiff's Motion, at 9.

above, the decision to consult an ME is squarely within the ALJ's discretion.[116] Even in cases in which an expert has been consulted regarding physical limitations, the ALJ is not required to consult an ME for evaluation of mental RFC evidence.[117]

### 7.    Non-Exertional Impairment of Pain

Macias argues that the ALJ failed properly to consider the non-exertional impairment of pain and its effects on Macias' ability to perform medium work.[118]  An ALJ is required to consider subjective evidence of non-exertional ailments, such as pain, which may have a disabling effect.[119]  However, pain constitutes a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."[120]

Macias' briefing in his Motion provides no citations to the record, and fails even to identify the location of the pain upon which he relies.  After Defendant's Response highlighted the inadequate briefing, Plaintiff's Reply listed four record

---

[116]   *Haywood*, 888 F.2d at 1467-68; *see Dominguez*, 286 F. App'x at 186; *White*, 129 F. App'x at 906.

[117]   *Haywood*, 888 F.2d at 1467-68.

[118]   Plaintiff's Motion, at 9-10.

[119]   *James v. Bowen*, 793 F.2d 702, 705 (5th Cir. 1986); *see Beck v. Barnhart*, 205 F. App'x 207, 212 (5th Cir. 2006).

[120]   *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001);  *see Beck*, 205 F. App'x at 212.

citations regarding pain: (1) Macias' complaint regarding lower abdominal pain in May 2006;[121] (2) pain in his right elbow in June 2000;[122] (3) pain in his right arm, right foot, and left buttock in January 2007;[123] and (4) a second report of pain in his right arm, right foot, left buttock, and stomach in January 2007.[124]  These four citations, which concern different body parts and different time periods, do not demonstrate pain that is "constant, unremitting, and wholly unresponsive to therapeutic treatment."[125] Substantial evidence supports the ALJ's finding that Macias was capable of medium work.[126]

### 8.  Severity of Certain Additional Impairments

Macias argues that the ALJ erred in finding that his hearing problems,

---

[121]   R. 499.

[122]   R. 280.

[123]   R. 216.

[124]   R. 213.

[125]   *See Chambliss*, 269 F.3d at 522.

[126]   *See Carnahan v. Apfel*, 247 F.3d 241, 2001 WL 43543, *3 (5th Cir. 2001) (although evidence showed that claimant had pain, there was no substantial evidence that the pain was "'wholly unresponsive to therapeutic treatment,'" and therefore substantial evidence supported the ALJ's finding that claimant had no significant nonexertional limitations of pain) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990)).

depression, poor memory, insomnia, and polyarthralgia were not severe.[127]  Contrary to his assertion, the ALJ did find that Macias' depression was a severe impairment.[128] The ALJ also considered his memory problems and insomnia when assessing Macias' RFC.[129]  Macias offers no reason why the memory loss or insomnia should have been considered separately from his depression.

Similarly, although Macias faults the ALJ for not finding polyarthralgia to be a severe impairment, the ALJ in fact found that post status right elbow surgery was one of Macias' severe impairments.[130]  Moreover, the ALJ recognized and addressed Macias' diagnosis of polyarthralgia when assessing the RFC.[131]

As for hearing loss, Macias cites only to the results of a hearing test in July, 2008, which was after the ALJ's decision issued.

The Court finds the ALJ's findings to be supported by substantial evidence.[132]

## V.   **CONCLUSION**

For the foregoing reasons, the Court concludes Plaintiff has not shown the

---

[127]   Plaintiff's Motion, at 10-11.

[128]   R. 20.

[129]   R. 23-24.

[130]   R. 20.

[131]   R. 24.

[132]   *See Perez*, 415 F.3d at 461.

ALJ's decision should be overturned.  It is therefore

   **ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 11] is

**DENIED**.  Summary judgment is **granted** for Defendant.

   A separate final judgment will issue.

   SIGNED at Houston, Texas, this **26th** day of **January, 2010**.

Nancy F. Atlas
United States District Judge